# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| EMPLOYERS INSURANCE COMPANY OF WAUSAU, | ' | NO. 3:06-0611 |
| | ' | |
| Plaintiff, | ' | |
| | ' | |
| v. | ' | Judge Wiseman |
| | ' | |
| MEDLINE INDUSTRIES, INC., AND CREATIVE BEDDING TECHNOLOGIES, INC., | ' | Magistrate Judge Bryant |
| | ' | |
| Defendants. | ' | |

## DEFENDANTS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Pursuant to Local Rule 56.01 of the United States District Court for the Middle District of Tennessee, Defendants MEDLINE INDUSTRIES, INC. ("Medline") and CREATIVE BEDDING TECHNOLOGIES, INC., ("Creative Bedding"), by and through their respective attorneys, hereby submit the following Statement of Uncontroverted Material Facts as to which there is no genuine issue:

### Parties

1.      Plaintiff EMPLOYERS INSURANCE COMPANY OF WAUSAU ("Wausau") is an insurance company organized and existing under the laws of the state of Wisconsin.  For purposes of diversity jurisdiction, Wausau is a citizen of Wisconsin.  (Pl.'s Second Amended Complaint, Ex. 1, ¶ 1).

### RESPONSE:

2.      At all times relevant, Wausau was the property insurance carrier for NHC

HEALTHCARE, NASHVILLE, L.L.C. ("NHC Nashville") for its property located at 2215

Patterson Street in Nashville, Tennessee.  Coverage was provided by Wausau to NHC Nashville

under Policy No. MCC-491-526416-353 ("subject policy").  (Pl.'s Second Amended Complaint,

Ex. 1, ¶¶ 1, 5).

**RESPONSE:**


3.      Wausau filed the present lawsuit as subrogree of NHC Nashville, and seeks

recovery of an insurance payment made by Wausau to NHC Nashville under the subject policy in

the amount of $6,063,759.87.  This payment was made for property damage and business

interruption damage allegedly sustained by NHC Nashville as a result of a fire which occurred at

its facility on or about September 25, 2003.  (Pl.'s Second Amended Complaint, Ex. 1, ¶ 1)

**RESPONSE:**


4.      Defendant Medline is an Illinois corporation with its principal place of business in

Mundelein, Illinois.  For purposes of diversity jurisdiction, Medline is a citizen of Illinois.  (Pl.'s

Second Amended Complaint, Ex. 1, ¶ 2)

**RESPONSE:**

5.     Defendant Creative Bedding is an Illinois corporation with its principal place of business in Crystal Lake, Illinois.  For purposes of diversity jurisdiction, Creative Bedding is a citizen of Illinois.  (Pl.'s Second Amended Complaint, Ex. 1, ¶ 2)

**RESPONSE:**


## Jurisdiction and Venue

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201 and 2202, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  (Pl.'s Complaint, ¶¶ 3-4, Ex. 1).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  (Defendants request that this Court take judicial notice over Docket Entries 52-53, establishing that this case was transferred to the present court from the United States District Court for the Northern District of Illinois on Medline's Motion to Transfer Venue under 28 U.S.C § 1404(a)).

**RESPONSE:**


## NHC Nashville Fire

7.     On or about September 25, 2003 at approximately 10:30 p.m., there was a fire at NHC Nashville's facility on Patterson Street.  (Pl.'s Complaint, Ex. 1, ¶ 5).

**RESPONSE:**

8.      Wausau alleges that the subject fire began in or near a mattress that was manufactured and/or sold by Defendants, and that, once ignited, the mattress created extensive toxic smoke and flames which caused property damage and severely hampered the fire fighting efforts of both NHC Nashville and the local fire department.  (Pl.'s Complaint, Ex. 1, ¶¶ 3-4).

**RESPONSE:**

9.      The mattress in question was totally consumed in the fire and, therefore, cannot be physically identified.  (Plaintiff's Answers to Medline's Interrogatories, Ex. 2, No. 12; Bob Hollman's Deposition, Ex. 4, p. 170).

**RESPONSE:**

**Identification of the Mattress in Question**

10.     Wausau alleges that NHC Nashville purchased the mattress in question in 1996 or 1997.  (Pl.'s Complaint, Ex. 1, ¶ 13).

**RESPONSE:**

11.     During the relevant time period of 1996-1997, Medline did sell certain mattresses to NHC Nashville.  (Affidavit of Peter Furlong, Ex. 5, ¶¶ 3-7).

**RESPONSE:**

12.     Each of the mattresses sold to NHC Nashville by Medline during the relevant time period of 1996-1997 were manufactured by Creative Bedding pursuant to a purchase order from Medline, and then shipped directly by Creative Bedding to NHC Nashville.  (Affidavit of Peter Furlong, Ex. 5, ¶ 8; Affidavit of Debora Nystrom, Ex. 6, ¶ 4).

**RESPONSE:**



13.     Robert "Bob" Hollman had exclusive responsibility for ordering mattresses for NHC Nashville during the relevant time period, 1996-1997.  (Plaintiff's Answers to Medline's Supplemental Interrogatories, Ex. 3, No. 3; Deposition of Bob Hollman, Ex. 4, pp. 8-9).

**RESPONSE:**



14.     Bob Hollman identified the mattresses he ordered from Medline as an innerspring steel coil mattress with foam.  (Deposition of Bob Hollman, Ex. 4, p. 59).

**RESPONSE:**



15.     The only type of mattress purchased by NHC Nashville from Medline and/or manufactured by Creative Bedding is the Nylex II Innerspring Mattress with Convoluted Foam. (Plaintiff's Answers to Medline's Supplemental Interrogatories, Ex. 3, Nos. 2 and 6;

Medline's Answers to Plaintiff's First Set of Interrogatories, Ex. 7, Nos. 16-17; Creative

Beddings' Answers to Plaintiff's First Set of Interrogatories, Ex. 8, Nos. 16-17; Affidavit of

Peter Furlong, Ex. 5, ¶ 6).

    **RESPONSE:**


## Purchase Orders and Sales Invoices

    16.    Attached hereto as Group Exhibit 9 are invoices and purchase orders that were

produced by Defendants in this litigation, and which have been referred to throughout this

litigation as Deposition Exhibits 47A – 52A.  (See Exhibit 9, which comprise Medline's

Response to Plaintiff's Request to Produce, Ex. 10, No. 27, and Creative Beddings' Response to

Plaintiff's Request to Produce, Ex. 11, No. 28).  The parties have stipulated that the documents

comprising Group Exhibit 9 (Deposition Exhibits 47A – 52A) are the business records of

Medline and Creative Bedding.  (Deposition of Debora Nystrom, Ex. 12, pp. 48-49).

    **RESPONSE:**


    17.    Group Exhibit 9 (Deposition Exhibits 47A – 52A) shows all of the mattresses

NHC Nashville purchased from Medline and/or manufactured by Creative Bedding.  (Deposition

of Bob Hollman, Ex. 4, pp. 25-28; Affidavit of Peter Furlong, Ex. 5, ¶¶ 3-5).  Bob Hollman is not

aware of any mattresses other than those documented in the invoices and purchase orders that

were purchased by NHC Nashville from Defendants.  (Deposition of Bob Hollman, Ex. 4, p. 28).

    **RESPONSE:**

18.     According to Group Exhibit 9 (Deposition Exhibits 47A – 52A), the following

mattresses were sold and shipped to NHC Nashville by Defendants on or about the referenced

dates:

| DATE | ITEM # | PRODUCT | QUANTITY |
|------|--------|---------|----------|
| 5/30/97 | MDT 231280C | Nylex II Innerspring mattress w/ Convoluted Foam | 23 |
| 3/19/97 | MDT 231280C | Nylex II Innerspring mattress w/ Convoluted Foam | 23 |
| 11/9/95 | MDT 231280B | Nylex II Innerspring mattress w/ Convoluted Foam | 6 |
| 10/11/95 | MDT 231280B | Nylex II Innerspring mattress w/ Convoluted Foam | 6 |
| 8/11/95 | MDT 231280B | Nylex II Innerspring mattress w/ Convoluted Foam | 6 |
| 7/25/95 | MDT 231280B | Nylex II Innerspring mattress w/ Convoluted Foam | 6 |
| 7/6/95 | MDT 231280B | Nylex II Innerspring mattress w/ Convoluted Foam | 6 |
| 6/16/95 | MDT 231280B | Nylex II Innerspring mattress w/ Convoluted Foam | 6 |
| 5/3/95 | MDT 231280B | Nylex II Innerspring mattress w/ Convoluted Foam | 6 |
| 4/4/95 | MDT 231280B | Nylex II Innerspring mattress w/ Convoluted Foam | 6 |
| 3/13/95 | MDT 231280B | Nylex II Innerspring mattress w/ Convoluted Foam | 6 |
| 2/17/95 | MDT 231280B | Nylex II Innerspring mattress w/ Convoluted Foam | 9 |
| 2/9/95 | MDT 231275B | Nylex II Innerspring mattress w/ Convoluted Foam | 6 |

(Exhibit 9).

**RESPONSE:**


19.     As detailed in Group Exhibit 9, the only type of mattress manufactured and/or

sold by Defendants to NHC Nashville was the Nylex II Innerspring mattress with Convoluted

Foam.  (Exhibit 9; Deposition of Bob Hollman, Ex. 4, p. 28; Deposition of Ted Lazakis, Ex. 13,

p. 155-157; Deposition of Marcus Peterson, Ex. 14,  pp. 164-172; Affidavit of Peter Furlong, Ex.

5, ¶ 6).

**RESPONSE:**


**NHC Nashville's 100% Foam Mattresses**

20.     In addition to the Nylex II Innerspring mattresses sold to NHC Nashville by

Medline and manufactured by Creative Bedding, NHC Nashville also used some 100% foam

mattresses (without innerspring coils) that were manufactured and/or sold by a different

manufacturer, Span America.  (Plaintiff's Answers to Medline's Supplemental Interrogatories,

Ex. 3, Nos. 4 and 6; Deposition of Bob Hollman, Ex. 4, pp. 71-72).

**RESPONSE:**

21.     Fifteen mattresses recovered from the second floor wing at NHC Nashville where the fire occurred are presently being stored at Abbott Self Storage in Nashville, Tennessee pursuant to the parties' "Agreed Order Regarding Custody of Physical Evidence."  Of those fifteen mattresses recovered, five of them were not manufactured or sold by Defendants – one is labeled as a Simmons mattress, two are labeled as Tendercare mattresses, and two are labeled as Span America mattresses.  Also, four of those mattresses (the Tendercare and Span America mattresses) are 100% foam and have no innerspring component.  (Affidavit of Harri Kytomaa, Ex. 17, ¶ 27).

**RESPONSE:**


**Exemplar Mattress Inspection**

22.     Attached hereto as Exhibit 15 is a set of photographs that were taken by Wausau's attorney, Sandra Liser, and produced in this litigation by Wausau as "WAUSAU 03699."  The photographs in Exhibit 15 were taken at an "Exemplar Mattress Inspection" on September 26, 2006, and truly and accurately document that inspection.  (Exhibit 15).

**RESPONSE:**


23.     During this "Exemplar Mattress Inspection" a Nylex II Innerspring mattress with Convoluted Foam was cut open and inspected.  (Exhibit 15).

**RESPONSE:**

24.     As reflected in the photographs, the inside of the a Nylex II Innerspring mattress with Convoluted Foam contains an innerspring array of steel coils.  (Exhibit 15, specifically photos 5-11).  The innerspring component measures 31 inches by 71 inches, and is made of 13.5 gauge steel Bonnell spring coil.  (Affidavit of Peter Furlong, Ex. 5, ¶ 9).

**RESPONSE:**


25.     This innerspring array depicted in Exhibit 15 was a component in every mattress sold to NHC Nashville by Medline and manufactured for NHC Nashville by Creative Bedding.  (Affidavit of Peter Furlong, Ex. 5, ¶ 9; Affidavit of Debora Nystrom, Ex. 6, ¶¶ 5-7).

**RESPONSE:**


**Photographs from the Tennessee Bomb and Arson Section**

26.     After the fire at NHC Nashville on September 25, 2003, the Bomb and Arson Section of the Tennessee Department of Commerce and Insurance, Division of Fire Prevention ("Bomb and Arson Section") was called to the scene to investigate.  (Affidavit of Russell Robinson, Ex. 16, ¶¶ 3-4).

**RESPONSE:**

27.    As part of the investigation, Special Agent II Russell Robinson photographed the scene of the fire.  Seventy-two (72) photographs were taken with a Digital Sony Mavica camera. These photographs were taken on September 26, 2003, between the hours of 3:09 a.m. and 5:23 p.m.  (Affidavit of Russell Robinson, Ex. 16, ¶ 5).

   **RESPONSE:**


28.    True and accurate copies of those seventy-two photographs and a corresponding log are attached to the Affidavit of Russell Robinson (Ex. 16) as Exhibits A and B.  (Affidavit of Russell Robinson, Ex. 16, ¶¶ 6-7).[1]

   **RESPONSE:**


29.    Included in the photographs attached to the Affidavit of Russell Robinson are thirteen photographs (numbered 8, 9, 12, 13, 25, 26, 27, 28, 29, 34, 35, 36 and 37) which truly and accurately depict the victim, the bed frame and the surrounding scene after the fire (hereinafter "victim photographs", which are separately attached as Exhibit 19).  (Affidavit of Russell Robinson, Ex. 16, ¶¶ 8-9).

   **RESPONSE:**

---

[1] WARNING:  Many of the seventy-two photographs taken by Mr. Robinson are extremely graphic.  The photographs depict a number of deceased victims, and also depict the gruesome remains of Ms. Ana Tolston, who was the victim on the bed at issue in the present litigation.

30.     These victim photographs were taken while the victim's remains were still on the bed frame and before the remains had been moved.  (Affidavit of Russell Robinson, Ex. 16, ¶ 10; Exhibit 19).

**RESPONSE:**


31.     The victim photographs reveal that the frame and springs of the bed frame survived the fire.  (Exhibit 19).

**RESPONSE:**


32.     The victim photographs graphically reveal that the mattress on the bed frame was completely consumed in the fire and that the victim was found directly on the bed frame and its springs.  (See Exhibit 19; and Affidavit of Russell Robinson, Ex. 16, ¶ 11).

**RESPONSE:**


33.     The victim photographs do not show the innerspring array measuring 31 inches by 71 inches and comprised of 13.5 gauge steel Bonnell spring coil.  (Exhibit 19; Deposition of Bob Hollman, Ex. 4, pp. 68-70; Affidavit of Peter Furlong, Ex. 5, ¶ 10; and Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 18).

**RESPONSE:**

## Inspection of Subject Bed Frame in Marietta, Georgia

34.     On April 19, 2007, an inspection was performed at Applied Technical Services, Inc. in Marietta, Georgia, pursuant to the "Agreed Order Regarding Custody of Physical Evidence." (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 21).

**RESPONSE:**

35.     Dr. Kytomaa inspected the physical evidence from the fire scene stored at Applied Technical Services, Inc., including the subject bed frame depicted in the victim photographs. (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 21).

**RESPONSE:**

36.     The inspection at Applied Technical Services, Inc. revealed that the frame and springs of the subject bed frame and related bed frame components survived the fire, although there was some limited annealing of the springs. (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 21).

**RESPONSE:**

37.     There was no evidence or remnants of any innerspring coil array at Applied Technical Services, Inc. (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 22).

**RESPONSE:**

## Inspection of All Inventoried Evidence in Nashville, Tennessee

38. On June 27, 2007, an inspection was performed at Abbott Self Storage in Nashville, Tennessee, pursuant to the "Agreed Order Regarding Custody of Physical Evidence." (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 24).

**RESPONSE:**


39. The evidence stored at Abbott Self Storage is being maintained by Mr. Metts Hardy of EFI Global, Inc. (Defendants request that this Court take judicial notice over Docket Entry 110, "Agreed Motion Regarding Custody of Physical Evidence", ¶ II). The evidence stored at Abbott Self Storage is set forth in an inventory prepared by EFI Global, Inc. and is attached hereto as Exhibit 18. (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 24).

**RESPONSE:**


40. The Storage Inventory, Exhibit 18, does not list or reference any mattress innerspring arrays. (Exhibit 18; Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 24).

**RESPONSE:**

41.     Dr. Kytomaa inspected all of the physical evidence from the fire scene stored at Abbott Self Storage, and as documented on Exhibit 18.  (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 25).

**RESPONSE:**


42.     There was no evidence or remnants of any innerspring coil component from the mattress in question at Abbott Self Storage.  (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 25).

**RESPONSE:**


**Mattress Fire Testing**

43.     On May 16, 2007, Dr. Kytomaa directed and observed the fire testing of four mattresses at Intertek ETL SEMKO in Elmendorf, Texas.  (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 28).

**RESPONSE:**


44.     Each mattress tested was manufactured by Creative Bedding in accordance with designated specifications.  (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 29; Affidavit of Debora Nystrom, Ex. 6, ¶ 8).

**RESPONSE:**

45. Two mattresses tested were manufactured by Creative Bedding in strict accordance with the same specifications of the Nylex II Innerspring mattresses with Convoluted Foam that were shipped to NHC Nashville during the relevant time period of 1996-1997. (Affidavit of Debora Nystrom, Ex. 6, ¶ 8).

   **RESPONSE:**

46. Two additional 100% foam mattresses were also manufactured by Creative Bedding for testing purposes. These mattresses did not contain an innerspring steel coil array. (Affidavit of Debora Nystrom, Ex. 6, ¶ 9).

   **RESPONSE:**

47. On May 16, 2007, all four mattresses were tested using the room configuration set forth in California Technical Bulletin 603 and 16 CFR 1633. (Affidavit of Dr. Kytomaa, Ex. 17, ¶ 31). A California Technical Bulletin 603 test use a propane burner that is designed to simulate the heat flux levels and durations imposed on a mattress and foundation by burning bedclothes (i.e., comforters, sheets, etc). It is performed with a burner applying flames to the sides and top of the mattress for varying times. (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 31).

   **RESPONSE:**

48.     As part of the testing protocol, all four mattresses were placed on a bed fame substantially similar to the subject bed-frame involved in the NHC Nashville fire.  (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 33).

**RESPONSE:**


49.     As part of the testing protocol, the fires for all four mattress tests were not extinguished, but, instead, the mattress fires were permitted to run their course until they simply self-extinguished.  (Affidavit of Dr. Kytomaa, Ex. 17, ¶ 33).

**RESPONSE:**


50.     The two 100% foam mattresses were tested first.  Both tests revealed that virtually the entire mattresses, including the foam and ticking (the nylon cover to the mattress), were consumed in the fire testing.  The bed-frame and the bed springs survived the fire and remained physically intact.  (Affidavit of Dr. Kytomaa, Ex. 17, ¶¶ 34-35; photographs attached to Kytomaa's Affidavit as Exhibit F, Nos. 39-65 and 74-97; DVD attached to Kytomaa's Affidavit as Exhibit E, icons 3122093-001 and 002).

**RESPONSE:**

51. The two Nylex II Innerspring mattresses were then tested. Both tests revealed that although the foam and ticking in the mattresses were consumed in the fire testing, the innerspring steel coil array survived the fire. In both tests, the innerspring array was found completely intact upon the bed frame after the fire. Although the steel coil innerspring array was superficially discolored from its exposure to the fire, the array remained physically intact, no melting occurred, and there was no apparent loss of structural integrity. (Affidavit of Dr. Kytomaa, Ex. 17, ¶¶ 36-37; photographs attached to Kytomaa's Affidavit as Exhibit F, Nos. 133-187 and 220-243; DVD attached to Kytomaa's Affidavit as Exhibit E, icons 3122093-003 and 004).

**RESPONSE:**

**Critical Uncontroverted Facts**

52. The mattress on the subject bed frame was completely consumed in the fire and has never been physically identified. (Plaintiff's Answers to Medline's Interrogatories, Ex. 2, No. 12; Bob Hollman's Deposition, Ex. 4, p. 170).

**RESPONSE:**

53. Wausau claims that the mattress in question was sold and/or manufactured by Defendants in 1996 or 1997. (Pl.'s Complaint, Ex. 1, ¶ 13).

**RESPONSE:**

54.      The only mattresses sold to NHC Nashville or manufactured for NHC Nashville by Defendants in 1996 or 1997 is the Nylex II Innerspring mattress with Convoluted Foam. (Exhibit 9; Deposition of Bob Hollman, Ex. 4, p. 28; Deposition of Ted Lazakis, Ex. 13, p. 155-157; Deposition of Marcus Peterson, Ex. 14,  pp. 164-172; Affidavit of Peter Furlong, Ex. 5, ¶ 6).

**RESPONSE:**


55.      When subjected to actual fire conditions, the large innerspring component of the Nylex II Innerspring mattress would survive the fire.  (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 40(i)).

**RESPONSE:**


56.      Had the victim had been placed on a Nylex II Innerspring mattress, the Bomb and Arson Section's victim photographs would have shown the innerspring component.  Instead, the photographs show that the mattress was completely consumed in the fire and there is no evidence or remnant of any innerspring component.  (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 40(ii); see Exhibit 19.

**RESPONSE:**

57.     Inspections of all available physical evidence recovered from NHC Nashville and a review of the evidence inventory have been performed.  No innerspring component was recovered from the fire, and no evidence or remnants of any innerspring component was documented or discovered.  (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 40 (iii).

**<u>RESPONSE:</u>**

58.     A Medline Nylex II Innerspring mattress was not on the victim's bed frame at the time of the fire.  (Affidavit of Dr. Harri Kytomaa, Ex. 17, ¶ 40(iv).

**<u>RESPONSE:</u>**

59.     Defendants did not design, manufacture or sell the mattress that was on the victim's bed frame at the time of the fire.  (See ¶ 54 and ¶ 58).

**<u>RESPONSE:</u>**

Respectfully submitted,

/s/ Jeffrey Singer                                                      
***Attorneys for Defendant Medline Industries, Inc.***
Jeffrey Singer
Brian H. Eldridge
Segal McCambridge Singer & Mahoney
One IBM Plaza
330 North Wabash Avenue, Suite 200
Chicago, IL 60611
Telephone:     (312) 645-7800
Facsimile:      (312) 645-7711

/s/ Christopher M. Jones
Mark S. LeVan
Christopher M. Jones
LeVAN, SPRADER, PATTON & McCASKILL
150 Fourth Avenue North, Suite 1020
Nashville, TN 37219
Telephone:     (615) 843-0300




 /s/ Gregory J. McKenna
*Attorneys for Defendant Creative Bedding Technologies*
Gregory J. McKenna
Cremer, Kopon, Shaughnessy & Spina, LLC
180 North LaSalle Street, Suite 3300
Chicago, IL 60601
Telephone:     (312) 726-3800
Facsimile:      (312) 726-3818

Marc Dedman
Spicer, Flynn & Rudstrom PLLC
211 Seventh Avenue North, 5th Floor
Nashville, TN 37219-1823
Telephone:     (615) 259-9080

## CERTIFICATE OF SERVICE

I do hereby certify that a true and exact copy of the foregoing has been served via electronic means on the following this 23rd day of August, 2007:

Raymond G. Prince, Esq.
PRINCE & HELLINGER, P.C.
150 Second Avenue, North Suite 300
Nashville, TN 37201-1920
*Attorneys for Plaintiff*
**rgprince@bellsouth.net**

Bozidar Robert Ostrojic, Esq.
LEAHY, EISENBERG & FRAENKEL, LTD.
161 North Clark Street, Suite 1325
Chicago, IL 60601
*Attorney for Plaintiff*
**ro@lefltd.com**

Bruce H. Rogers, Esq.
BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, LLP
306 West Seventh Street, Suite 200
Forth Worth, TX 76102-4905
*Attorney for Plaintiff*
**brogers@browndean.com**

George Grant Liser, III, Esq.
BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, LLP
306 West Seventh Street, Suite 200
Forth Worth, TX 76102-4905
*Attorney for Plaintiff*
**gliser@browndean.com**

John C. Hart, Esq.
BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, LLP
306 West Seventh Street, Suite 200
Forth Worth, TX 76102-4905
*Attorney for Plaintiff*
**jhart@browndean.com**

Sandra Cockran Liser, Esq.
BROWN, DEAN, WISEMAN, LISER, PROCTOR & HART, LLP
306 West Seventh Street, Suite 200
Forth Worth, TX 76102-4905
*Attorney for Plaintiff*
**sliser@browndean.com**

Jeffrey Singer, Esq.
Brian H. Eldridge, Esq.
SEGAL, McCAMBRIDGE, SINGER & MAHONEY, LTD.
330 North Wabash Avenue, Suite 200
Chicago, IL 60611-3514
*Co-Counsel for Defendant Medline Industries, Inc.*
**jsinger@smsm.com**
**beldridge@smsm.com**

Gregory James McKenna, Esq.
CREMER, KOPON, SHAUGHNESSY & SPINA
180 North LaSalle Street, Suite 3300
Chicago, IL 60601
*Attorney for Defendant Creative Bedding Technologies, Inc.*
**gmckenna@cksslaw.com**

  /s/ Christopher M. Jones